Mr. Justice Cox
delivered the opinion of the court.
This is an action brought by George E. Moore, the owner of a certain tract of land on the outskirts of the city, against the defendants, Langdon & Barber, for an alleged nuisance. The substantial allegations are that at the time of the commencement of this action the defendants were in possession of a certain tract of land adjoining that of the plaintiff, known as Le Droit Park, that they had laid down certain main sewers in that park, through which were carried, large quantities of impure water, sewage, &c., which collected upon the premises of the defendants and thence flowed over the laud of the plaintiff, making a marsh, preventing the comfortable occupation of his house and premises, and injuring the pasture of his cattle.
The first question was as to the fact of nuisance, and the first exception taken on the part of the defence was to the admission of evidence supposed to be offered as tending to prove that fact. The evidence objected to, and to the admission of which this exception was taken, is a notice addressed by Dr. Townshend, the health officer of the District, to the defendants, in the following language:
*131 “ Washington, D. C., August 2,1878.
“To A. L. Barber & Co.,
■ “ Sirs : There is a nuisance on your premises, Le Droit Park, consisting of contents of sewer emptying on to adjoining premises, which has become offensive and injurious to health. You are hereby required to cause said nuisance to be abated within ten days after date of service of this notice ; otherwise you will be proceeded against agreeably to law and the health ordinances of the District of Columbia, in such case made and provided.
“Smith Townshend, M. D.,
Health Officer.”
The fact seems to have been, that a sanitary inspector examined these premises on two occasions, and on his report this notice was served.
On the part of the plaintiff it is maintained that this evidence was competent at least for one purpose, that is, to show that the defendant had full notice of the existence of the nuisance, so that their persistence in maintaining it after due notice might be held to furnish a ground for exemplary damages. The evidence, however, was not offered professedly for that purpose, nor did the court limit its effect to that result. On the contrary, the court told the jury that there was no case at all for exemplary damages; but the evidence was admitted on the general issue of guilty or not guilty as to the nuisance ; and the question is whether it is competent evidence tending to prove the affirmative of that issue — the existence of the nuisance. Now this letter from the Health Officer to the defendants is simply a statement or declaration, as to the fact, by a third person. It is undoubtedly hearsay testimony. If it is to be regarded as an official proceeding, it was res inter alios and incompetent testimony as between these parties; and, treated as a declaration, it is, of course, the purest hearsay. In other words, it simply shows that the health officer said that there was a nuisance on these premises. And this is not all that is objectionable in it ; for the health officer does not make the *132 statement from his own personal knowledge, but from information received from somebody else — his inspector. Therefore, this letter merely shows that the health officer said that somebody else said that there was a nuisance on these premises. And even this'is not all that is objectionable in the character of this testimony ; for the letter of the health officer gives notice of the existence of a public nuisance on the premises of the defendants; while it is offered as evidence of the existence of a private nuisance on the premises of the plaintiff. Now, there might be a public nuisance on the defendants’ premises without the existence of any private nuisance as to the plaintiff*, and a public nuisance would afford no ground for an action by the plaintiff’, unless it was a pi’ivate nuisance also. We are unable to see any ground upon,which this evidence could have been properly admitted, and as it was calculated to exercise a decided influence upon the minds of the jury, for this reason if for no other, we think the verdict ought to be set aside.
I proceed to state the views of the court as to some of the other questions that arise in the case.
The allegation is that the defendants were in possession and occupation of the premises and that they, the defendants, through these sewers, discharged this offensive matter on the plaintiff’s premises. There is no evidence in point of fact that the defendants were in possession of the premises at all. On the contrary, the fact seems to be admitted that the property had been divided up into lots and sold to different parties, and that a large number of houses had been erected on those lots by the purchasers, who had connected their houses by drains with these main sewers, and that they were engaged in discharging this offensive matter through these drains and sewers. There was offered in evidence a memorandum on the record of the subdivision of this tract of land, purporting to be signed by the defendants, to the effect that they retained ownership and control of the streets ; but, assuming that to be competent evidence, the ownership retained was simply the kind of ownership which the common law contemplates, that is, ownership of the *133 soil, subject to the easements that had been given to the purchaser’s of the lots. The streets had been laid out and these sewers constructed and houses erected and sold with reference to these easements, and the defendants thereafter had no more right of ownership or control over the sewers than over the houses themselves. They had simply a technical ownership of the soil subject to these easements. It may be held, therefore, that the defendants had entirely parted with the use and control of these sewers; and, consequently, the case is not complicated by the question of ownership and control of the.sewers by the defendants at the time this action was brought. The real question here — a very serious and difficult one — is, how far the defendants, having constructed these main sewers and afterwards parted with the ownership of the property, are responsible in law for a nuisance created by the subsequent use of those sewers by other parties. I think that, taking the most liberal view of the plaintiff’s rights, the utmost he could claim would be that the defendants should be responsible for the use of these sewers by the parties for .whose use they were intended ; but the court below went further. It appeared in evidence that another class of people, occupying a distinct property, namely, the Howard University grounds, had made connection with these sewers. This appears from a portion of the testimony which is set forth in the record :
“ Question. That sewer takes all the surface water and all the filth about Howard University grounds, does it not? Answer. Yes, sir ; it is what was there before.
“Q. Will you tell the jury that any night-soil in any quantity, ever passed over Mr. Moore’s place, before the construction of this sewer? A. Yes, sir ; from the Howard University.
“ Q. From what property? A. From pig-pens and from outhouses ; they have no sewerage there in the University grounds, and they have to use a surface sewer; they run it all into this drain.
“ Q. Did they deposit night-soil on the surface ; was it not in boxes? A. It was in boxes, but they were oozing over.”
*134 So the evidence tended to show that the night-soil from the Howard University grounds enters into these drains and passes through this sewer also, and from the language of the court below, it would seem that the defendants were held liable for that. The language of the court was:
“If the jury are satisfied that you [the defendants] laid the pipes there, and discharged upon the plaintiff’s premises offensive matter, you are liable for all the injury which they have done in the shape of a nuisance to Mr. Moore’s land.”
“ Mr. Worthington ; That is not the precise point. Are they liable for the acts of persons who subsequently built houses there ?
“ The Court : For the whole matter that passes through the pipes and finds a lodgement upon the premises of the plaintiff.”
Now, that left it to the jury — perhaps not very distinctly, but still it left it open to them — to infer that the defendants would be liable for a nuisance resulting from this offensive matter coming from the Howard University grounds. Even if the court were right in thinking that the defendants were responsible for the acts of householders in Le Droit Park, they failed to discriminate between their responsibility for that and their responsibility for the acts of other parties outside ; and in that way injury may have been done to the case of the defendants.
But there remains another very interesting question, viz., whether, for the acts of these people in Le Droit Park, who used these sewers, the defendants, who sold them the property, are responsible ?
This question is not free from difficulty : Indeed, it is a very difficult one. There is an apparent discrepancy in the authorities. There is, however, a principle in the law of torts by which, we think, this question may be determined and the authorities reconciled. The principle is, that a person is only responsible for that damage which results proximately and directly from his acts. If it is sought to make a party responsible for a given injury, the question is whether his act is .the direct and proximate cause of the injury. If *135 it is, lie is responsible. If, however, other independent agencies and volitions have intervened between his act and the result complained of, and his act is only a l’emote cause of the result, then he is not responsible. Hence, some of the best considered cases draw a distinction between those things which are nuisances per se, and those which only become nuisances by the use made of them. They hold, for instance, that if a man creates a structure which is itself a nuisance, without the intervention of the acts of other parties, he is responsible for the consequences, whether the nuisance be erected on his own land, which is afterwards sold to somebody else, or erected in the first instance on the land of another party; but if the structure is of itself innocuous, and the nuisance arises from the use made of it subsequently by the agency of other parties, entirely optional with them, then the author of the erection is not responsible, unless he is in some way connected with the use which makes the nuisance. For example, there is cited the case of a tunnel constructed on an island in the middle of a river, so constructed that at a certain stage of the tide, or of a freshet, the whole structure collapsed of itself, without the act of any third party, and the water rushed in and damaged the property of the plaintiff. There was no evidence of anybody else’s agency in making this nuisance; the very thing created by the defendant was shown to be of itself a nuisance, and his act was deemed to be the proximate cause of the nuisance, although the damage occured some time after the erection was made by the defendant. Other cases have been cited in which landlords have been held responsible for nuisances on premises leased by them for trades which were themselves noxious, and landlords have been held responsible upon the ground that they were receiving profit from such use of the property, and were, therefore, connected with the use constituting the nuisance. In other cases, where a person has conveyed property with a general warranty, it has been held that he was responsible for the use. A very complete discussion of this subject is found in the case of Eich vs. Basterfield, 56 English Common Law Eeports, 783. In that case the land *136 lord built a chimney, which of itself hurt nobody until the fires were built in it. The tenant took possession and made his fires, and the smoke from the chimney became a nuisance. The court reviewed the decisions up to that time and discussed them with great ability, and took the broad distinction between things which are nuisances in themselves, and things which only become nuisances by the use that is made of them, and held that in that case the landlord was not responsible, because his act was not the proximate cause of the injury complained of.
■ Now, to apply this principle to the present case, here was a park laid out in building lots for suburban residences— not city lots, but large lots such as are commonly laid out and built upon in the suburbs of cities. The purchasers of these lots were not bound to connect their premises at all with these sewers. It was optional with them whether they would introduce the Potomac water into their houses, or whether they would use the outhouses which are commonly used in suburban places and villages’. They chose, however, to introduce the water, and to make these connections with the sewer, without which there could have been no nuisance from that source. They chose to introduce the water of the Potomac river into their houses, and to use these drains and sewers to convey away offensive matters. But for their active agency in pi’omoting these results there would have been no nuisance. The act of the defendants in the first instance in laying out the sewers, if it was a cause at all, was a remote cause, and it does not seem that they should be held responsible for consequences resulting from the intervention- of other persons. If this be the correct .view of the law, the action could not be maintained upon the facts set forth in this bill of exceptions ; though other facts may put a different complexion upon the case. As, for instance, if the defendants had warranted the right to use the pipes to the lot-holders, or still retained control over them, and knowingly permitted them to be used offensively, &c., or other equivalent facts which would connect them directly with the use complained of.
A new trial is -therefore granted.